You'll hear argument this morning in Case 17-1594, Return Mail, Inc. v. the United States Postal Service. Ms. Brinkman. Mr. Chief Justice, and may it please the Court, the term person in this case does not extend to include the government for three reasons. First, the other branches rely on the Dictionary Act definition of person and this Court's presumptive definition of person to not include the government. That is a stable framework that's critical to that communication between the branches. Second, the estoppel that was enacted by Congress specifically references the jurisdiction of the District Court and the International Trade Commission, not the Court of Federal Claims where the government's patent litigation takes place, reinforcing the definition of person not to include the government. That was a linchpin to the structure that Congress set up. It created a new adversarial administrative process, and part of that balance was to ensure that patent holders that were subject to that new adversarial process could then be protected from having to go back and relitigate in court, in District Court or the International Trade Commission. Your position is that it's the estoppel provision is the linchpin, you just said. But your position would be the same even if there were no estoppel provision. Is that not so? That is correct, Your Honor. It's just the linchpin to the balance. It's a reinforcement. The Dictionary Act definition and the presumptive definition would do the work here because that is the reliance by Congress and the give and take before the branches so Congress knows how the word person is going to be interpreted when they use it. So the linchpin part of the estoppel, though, reinforces that because it only refers specifically to the District Court and the International Trade Commission. And the third point I wanted to make, Your Honor, was that this does not exclude the government from going after bad patents. To the contrary, the government is different, has the most powerful tools to do that. First, the Patent and Trademark Office Director has the power to sua sponte, initiate ex parte reexaminations, and can go after patents after they've been issued. Would the government or the Postal Service be able to initiate ex parte reexamination? Because under your theory, person doesn't include the Postal Service. How do you punish them if they send a letter saying there was this prior art, do you want to look at this? The statute does not preclude a communication, Section 303, that allows the sua sponte reexamination by the government through the PTO. It does not preclude someone bringing a matter to the attention of the director. But someone is not, according to you, a person is not the government. So where does the government get its permission? The government in the form of the Postal Service, where does it get the permission to initiate that process? Well, there are two different ways that an ex parte reexamination can be initiated by a person or sua sponte by the director of the PTO. And the way Congress set up the structure for the government to go after bad patents was through the sua sponte director. That's 303. 301, where a person can request it. The same starting point would be here under the presumptive definitions that it likely would be construed not to include the government. There's a different history to that provision than the three AIA provisions, the American Events Act that was enacted in 2011. The reexamination provision was enacted back in 1980. And it is different because it's not an adversarial process at all. All that happens is that a person can ask that it be initiated. But then it's very different. It's much like the original issuance of a patent. It's a back and forth with an examiner. But do you think it would be proper for the Postal Service or some other federal agency to contact the PTO ex parte and say, hey, why don't you sua sponte look into the validity of this patent? Is that what you're saying, that would be proper? I think it is allowable, Your Honor. The statute does not prohibit that. In fact, that's 303. And there's a regulation, 1.520, that says that normally, normally the director would not institute sua sponte in response to a suggestion. Well, that's an argument that makes me doubt your argument on the statutory language. Because I think if this were presented to Congress and the issue before Congress was, do we want a federal agency to be able to initiate one of these AIA proceedings in the open in accordance with the law? Or do we want to allow them to pick up the phone to the PTO and say, patent and trademark office, and say, hey, why don't you sua sponte look into this? Which of those do you think they chose the latter? The sua sponte reexamination process is very different because the government would not come in then and be a litigant as they are here. There was no estoppel provision, for example. And that's why the analysis for the reexamination is different. What we know here is, though, as far as the government goes, going after bad patents, there's two very forceful tools that Congress has. One, the PTO director who Congress has vested with the expertise over patent law is the one that sua sponte does that. And then the government doesn't need to go after. They can use a patent. Then the person who holds the patent, the patent intervention, has to come over to the Court of Federal Claims and request compensation. And that shows how Congress created this different structure for the government in 1498 before the Court of Federal Claims. Very different. No jury. You can't get an injunction against the government. They can use it, and then you have to come to 1498 and recover compensation from them. Why would Congress want to leave a government agency out of this second look if the idea is to weed out patents that never should have been given in the first place? Because the government already has opportunities through both the reexamination and through challenging the validity. All of the grounds for validity can be challenged in the Court of Federal Claims. But moreover, Your Honor, when we go back to the principles in which Congress used the word person, the question isn't whether or not why they would have excluded. The question is, is there any indication that Congress intended to extend this to include the government? Your argument on the Dictionary Act, you know, the idea that everybody knows this is what it means, and so you start from common ground, that really has to be based on a legal fiction, right? Nobody would think when Congress wrote this that, okay, we're using person according to the Dictionary Act, except sometimes we're not, because you agree there are some times when it does include the government. And in those situations, we'll just leave it up to the courts to figure out, even though we don't say this, that here we're not following the Dictionary Act. I don't think it's leaving it up to the courts, Your Honor. I think it's that Congress has to indicate through the context that it means otherwise, and it's very akin to — And it seems to me that if people were, in fact, looking to the Dictionary Act and they want to depart from it, they would have used something a little more clear than the context. Well, certainly, Your Honor, there are examples. We know that person is not used consistently in the America Events Act or in the Patent Act. And the government really turns on its head when it says, oh, well, why would you exclude it? Instead, the question is, is there anything affirmative to indicate that the government was included? And I think when you look at the two aspects that the government invokes, oh, you know, the government gets to own patents. Oh, and we get to raise this defense about intervening rights. Both of those have very strong contextual affirmative statements. 207 makes clear that each federal agency can own a patent, obtain a patent. And we know from 1498 and its predecessor statute that the government can raise all defenses. So there is nothing to suggest from that context that there was an affirmative indication to extend this to the government. Well, counsel, the argument on the other side I know we're going to hear is Section 207 allows the government to participate in a lot of aspects of the patent system affirmatively. And given that, it would be natural to extend it to IPR review as well. Do you care to respond to that argument? I think a very useful guide here would be to look at the Cooper case. The Cooper case was about whether or not the government could use another tool like here, whether they could seek trouble damages in a civil damage action under the antitrust laws. There was a very similar definition there to the Dictionary Act. And this court looked to the presumptive meaning of person not to include the government and said, we're looking to what Congress said here. And there was nothing affirmative to include it, even though it could be an additional tool. I think it's such a good example because that decision was in 1941. In 1955, Congress enacted a provision that gave the government that tool to seek civil damages. Two other things, though. They didn't do it through redefining the word person. They set up another provision to have the government bring actions, civil actions. And they did not provide for trouble damages. It was not until 1990 that Congress provided for trouble damages. This is case ‑‑ I mean, you're talking about antitrust law. Now, let's think of the patent statute. And you've read in there, brief and elsewhere, that they're quite ‑‑ that, one, as you said, the government's free to obtain patents like anyone else, agencies, et cetera. Moreover, there are quite a few or several provisions in the patent law where the word person seems to include the government. For example, you can't get a patent if any person, you know, can't get a patent if there's prior art or whatever. You know, there are quite a few like that or several like that. Now, what are your best one or two examples of the opposite, where, in fact, the patent statute uses the word person and it's pretty clear that person does not include the government? What would you ‑‑ not antitrust examples, but patent examples? Your Honor, I can give you three examples that we discuss in our reply brief. The first one would be section 317. It's contemporaneous with the review provisions we're talking about here. That has to do with obtaining information from the agency about settlement. And it provides that the government can do it just by a request. But then it explains that persons must make more of a showing to get it. That is a distinction. So that's a clear example. And that's not just 317. It's also in 327 and 135 having to do with the different review provisions. The second one I would refer to is 292. There's subsection A and B. That has to do with the remedies and false marking. It's kind of parallel to the Cooper case, in fact, because A provides for a penalty for the government to obtain. B applies for persons to seek damages. That does not include the government. The third one I would point to is 257. That has to do with when the director was referring a person to the attorney general for fraud. And that clearly refers not to the government. So if there's one thing we know is that the word person, the term person, is not used the same throughout the act. And that's because Congress has a backdrop and knows that it does not include the government unless it makes an affirmative showing to the contrary. And I should say in addition to the two we talked about where there's an affirmative showing 207, federal agencies can own patents. So things flow from that. And the government can raise defenses through 1498. There's another provision that's very informative. It's the provision that was at issue in the Florida prepay case that was held unconstitutional trying to waive the sovereign immunity for states. The other part of that provision, though, in 296 was who could sue. And it said persons could sue, including governmental entities. So, again, Congress is enacting this dialogue between the branches. Congress and the President, when they're enacting laws, know that if they mean to extend the term person to include the government, they have to provide so. If the act permits the government to sue for infringement, to be sued for infringement, which it does, what do you think it means to take away a defense, meaning this is a defense tool for infringers? Does it make logical sense to deprive the government of the tool of being able to invoke this proceeding? A couple things there, I'd say, Your Honor. The court did not grant cert on this, and I'm not here to argue, but we have a different view. We don't believe actions for compensation in 1498 in the Court of Federal Claims are actions for infringement. They're for use without authority. But just to put a fine point on that. But going back to the tool, I would also say that this is not a defense. When you raise a defense in litigation, you're litigating against your opponent and you're defending to get a judgment that you have an infringe. This is an affirmative action to send federal agencies under the government's view into another federal agency to expand their power and that power to invalidate patents for all time, for everyone. The government does have that power. It's in the expert patent and trademark office director through reexaminations that they can do with sua sponte. And regardless what one thinks of the policy undergirding that, you would think it would be quite remarkable for Congress to set up this whole structure without saying a word in silence. And that, too, reinforces the fact that we have to read the word person as the other branches understood it be to not include the government here. Ms. Brinkman, I take it you agree that 207 does indicate that the government counts as a person for a variety of provisions. Is that right? So 102, 118, 119, all of those provisions because the act specifically says the government can obtain a patent. It follows that those provisions apply to the government as well. Do you agree with that? With the provision, it references each federal agency, and it was part of the Bayh-Dole Act to try and figure out how the government could handle research patents. And we do think that because of that provision, the provisions that then apply to patent owners would apply to them. But many research universities and much of the government get patents through assignments, for example. So the government is different in many ways. That doesn't mean, though, because in one way, Congress wanted to allow the government to have this exercise of handling patents, that that gives any inference to other aspects. This has nothing to do – Right, but I guess what I wanted to ask was whether those provisions, the 207A1, that the government can obtain a patent, 207A3, which is that the government can protect its rights to inventions, whether those might also lead you to say that the government is a person for means of bringing these challenges. Because the idea, I think, would be something like these challenges to the PTO are a means of – enable the government to innovate and to obtain patents itself. In other words, the government is looking at an area. It says somebody is claiming a patent on this. That's preventing us from inventing. That's preventing us from getting a patent. So we have to kind of clear the field in order to innovate. And that's what these challenges enable the government to do so that they are a kind of function of 207A1 and 207A3. What would you think of that argument? It might be a policy argument that someone might consider, but it's not what Congress did. There's no evidence. The backdrop of which Congress enacted it was not perceived that way. The idea of going against bad patents is something that the government has robust authority to do, again, through the Patent and Trademark Office Director, through reexamination. And that is a much more appropriate avenue for that, Your Honor, because that isn't litigation amongst adversaries. If you're thinking, oh, this isn't a good patent for the government, the PTO Director can look at this. And then there's an examiner who goes back and forth, and there's more liberal amendment procedures, for example. And that's where you really weed to, is there anything here that, you know, can be patented? So that is amply already covered and has been through the reexamination process. What is the Director of the PTO supposed to do when he gets one of these calls from the government and says, we want you to reexamine this? Is he or she supposed to make an independent determination, or is he or she supposed to salute and go ahead and do it? Under the statute, under 303, it explains that the Director can, on his own initiative, at any time, as discovered by him or cited to him. It can even rely on art that was cited in an actual request that someone filed. Or the regulation provides anything that's been brought to his attention. So there's a very broad area, because that's only about beginning the process. Then there are other regulations and statutes that require things to be put on the record and explained, and why the reexamination is brought under. And I should also say, I mean, there's nothing to preclude. In fact, the PTAB recently, for example, had amicus briefs. It's not a barrier to information being provided. It's really the authority and how where the government has its authority. Ms. Brinkman, I guess the question I'm struggling with, and I think some of my colleagues are as well, is one could understand why a rational Congress wouldn't want the government to go before its own agency to kill private party patents. I can understand that argument. What's less clear to me is why a rational Congress would allow ex parte review initiated by the government before a governmental agency. That kind of situation. But not allow a more robust adversarial process involving the government as a party. So what's the rational line that one could draw between those two arrangements? I think that's where I'm struggling. I would say on the reexamination, Your Honor, it's much more of a consideration of the agency's own reconsideration. And it's a back and forth in interaction as very much the original interaction between the examiner and the patent applicant is. And in a reexamination, often the patent comes out stronger. It's not just to challenge it. It's to figure out where the strength is, and it can be reissued as a stronger patent, in fact. And that really furthers the interests that are at the crux of the patent system in our country. The one thing you haven't said is why not simply say the government can't? Meaning if you're going to be consistent, then why do you need to give a different reading to a person in the ex parte examination context? I'm not quite sure why you're doing that, but perhaps in answering this question. Let me just say, Your Honor, also, I do think that if the starting point for the person in the ex parte reexamination is the same, it would not normally be construed to be part of the term person. If you're looking for context in any affirmative indications from Congress, there is a different history and structure for the ex parte reexam. It was from 1980. It's not adversarial. The only role the person, whether it's the government and someone else, plays in an ex parte reexam is to request the reexam. There was no discovery. There was no briefing. There was no adversarial process. So it could be different, Your Honor. We don't think it need be. We think that the power of the government and the authority and the structure that was set up, in addition to the reliance on the dialogue between the branches and the use of the term person, that really reinforces that this use in the AIA review provisions does not include person. A fairly small firm would like to go ahead with an invention but is afraid that Google owns a patent on it, but it thinks Google's patent is invalid. And so they start this procedure, which is supposed to be more efficient. I don't know if it is. But they start it because they want Google's patent to be cleared. That was no good. And then they can go ahead. Well, a government agency, either directly or because they've hired under contract this same person, owns a patent or doesn't, but would like this same group under contract to go ahead, but they're afraid Google's patent blocks it. Now, since the agency could own a patent, may not, it seems like it's in the same situation. Is that small company or medium-sized company or big company? So why would Congress not want to allow that agency to use this fairly efficient method to get rid of what they see as an invalid patent that blocks their way? Now, you have one reason, which is this Court of Claims, or as I take it, the government in the Court of Claims would not be estopped for what it might have brought, though it probably would be estopped for what it did bring in accordance, bring before this quick procedure. Now, that's one, and I've got that, and that's a point. And the reason I'm asking this complicated question is I want to be sure there aren't others. A couple points I'd like to respond to, Your Honor. First of all, on our answer, you know, that the government can defend in the Court of Federal Claims, true, but also the government, through the expert office of the Patent and Trademark Office Director, has the ability to sua sponte, reexamine a patent just like that, and that certainly is something that could be done. The second thing I would say — Yeah, but, I mean, that's equally true of Joe Smith. I mean, unless the government, let's say the FTC, the EPA, the government's a huge organization of many, many different parts, DARPA, who knows? I mean, any of these agencies can want to, under contract or not, develop something. What's the difference? Well, it's not true for Joe Smith. Joe Smith cannot start. He can ask the reexamination. And what can the government do? What can DARPA do that Joe Smith can't do? Well, if I can just flip for a moment to just explain what the AIA review provisions are, because I don't think they're as broad as would be believed through that kind of scenario. First of all, the covered business method patent that's a review here, no one can bring this kind of review unless they've already been sued for infringement or charged with infringement. So, no one, DARPA could not go in and bring this review procedure. That isn't my question. My question is, what is it that DARPA could do or not do that Joe Smith, who has his company, could do or not do? And I've got one of them, which is the Court of Claims, where there is a difference. Where else is there a difference? The other difference is that DARPA can use it. It can't get enjoined from using it. It can just use a patented invention. No one else can do that. And then the burden is on the patent owner to go into the Court of Federal Claims and seek it. And the government there, very different, treated very differently. No jury, no induced infringement, no enhanced damages, no enhanced fees. Very different structure. And that, again, is a very important backdrop for what Congress was doing when it used the word person. I was trying to figure out the difference between ex parte reexamination and these review procedures from your perspective. And I gather that the difference is that the PTO will be the final word within the executive branch if the ex parte reexamination procedure were the only avenue, whereas the Postal Service could seek judicial review against the office if dissatisfied, if the government's position prevailed. Is that the difference in the two review proceedings? Well, there also are all the litigation that's available if there's an action against the government for using the patented invention. And certainly that, as I just explained, is a very robust process for the government also. If I could, I'd like to save the remainder of my time for rebuttal. Thank you, Counsel. Mr. Stewart. Mr. Chief Justice, and may it please the Court. This Court has said on a variety of occasions that the term person does not ordinarily include governmental bodies. But it's also made clear that this is not a hard and fast rule. And consistent with the text of the Dictionary Act, the definition of person as not including governmental units can vary depending on the context. And this is something well short of a clear statement requirement. The Dictionary Act doesn't say if a particular law expressly provides otherwise, the term will be given a different meaning. It says unless the context indicates otherwise. Except this is a very different situation. The Cato Institute, in their Amici brief, suggests that in a situation in which the government is basically two branches of the government, or two agencies of the government are disputing one another or before one another, that that's a special situation that requires a closer look and a more expressed statement. It does seem like the deck is stacked against a private citizen who is dragged into these proceedings. They've got an executive agency acting as judge with an executive director who can pick the judges, who can substitute judges, can reexamine what those judges say, and change the ruling. And you've got another government agency being the prosecutor at the same time. In those situations, shouldn't you have a clear and expressed rule? I guess the first thing I would say is that regardless of how this case comes out, regardless of whether governmental units, Federal governmental units, are thought of as persons who can invoke interparties and CBM review, there are at least two scenarios in which governmental bodies could wind up in PTAB proceedings. The first is, as Justice Kagan alluded to, Section 207 expressly authorizes each Federal agency to seek a patent. And the statute doesn't say so in so many words, but everybody understands that the same substantive and procedural provisions that govern anyone else's patent application will apply when a Federal agency applies for a patent. So when the Federal application is considered by an examiner, the examiner applies the same substantive standards and is trusted to do that, is trusted not to give special weight to the representation of the Federal agency. But, Mr. Stewart, there we have the express language of 207 that does that work. And here you're asking us to imply it. And I think Justice Sotomayor raises a really important question. Normally we think of the executive branch as able to resolve its own disputes and speak with one voice. And as Justice Kavanaugh alluded to with ex parte review, you have the final word of the PTO director as the final word of the executive branch on the status of a patent. And here the scenario would be that the government speaks out of both sides of its mouth. Potentially the PTO director resolving a case against, say, the Postal Service and coming to court for us to resolve that dispute about the executive department's view of the law. That's unusual, not to say unprecedented, but unusual. And shouldn't we, as Justice Sotomayor suggested, at least expect some sort of clarity from Congress when it wants that unusual arrangement to reign? Let me say two things, the first of which is a continuation of what I was saying to Justice Sotomayor, that clearly Congress did contemplate that there would be situations in which a federal agency could come before the PTAP because in the initial examination context. If you could get to my question, Mr. Stewart, we acknowledge in 207 nobody's here disputing that the executive can come before the PTO to secure a patent. That's in the language of 207. Exactly. And the statute doesn't say in so many words, if a federal agency as patent applicant is dissatisfied with the examiner's decision, it can appeal to the PTAP and potentially appeal to the federal circuit. But everybody understands that those provisions apply equally to federal agencies. But the second thing I would say is, although there is a theoretical possibility that a federal agency could file such a suit, on balance, on net, I think our position is very likely to reduce the incidence of executive branch agencies disagreeing in court. Because what you have in 1498 is a provision for the United States to be sued for unauthorized use of the patented invention. And one of the defenses we can raise is that the patent was invalid. And it's very clear that Congress intended for all the defenses, including that one, to be available to the United States. Now, that wouldn't involve the spectacle of the PTO actually participating as a party in the 1498 proceeding, because usually the PTO wouldn't be in the infringement suit. But it would be a case of the Postal Service asking a court to rule that the PTO was mistaken in issuing the patent. That's the difference that Justice Gorsuch is identifying. You have agency versus agency in federal court. And again, not unprecedented, but unusual. And why should we go down that road when there's ex parte reexamination process available? And why should we think that Congress wanted us to go down that road when they didn't put the estoppel protection at the back end? Let me address that in two parts. The first is, to finish the answer I was giving to Justice Gorsuch, that by invoking CBM review in this case, the Postal Service was able to avoid the situation in which the Court of Federal Claims would be asked to rule on the Postal Service's assertion that a PTO patent was invalid. The matter was effectively resolved within the executive branch in the sense that the Postal Service asked that CBM review be instituted. The director agreed. At the conclusion of those proceedings, the PTAB concluded that the patent was invalid. At that point, return mail was — Mr. Stewart, I hate to interrupt you, but I'd really like an answer. It's the same question I asked and Justice Kavanaugh asked, and perhaps you could get to it. My answer is, it is theoretically possible that there could be an appeal from a PTAB — by a federal agency from a PTAB decision that was unfavorable to the government. It hasn't happened yet, presumably, in deciding whether such an appeal would be taken, the government and specifically — And you acknowledge that's unusual? I acknowledge that it's unusual, but as I — And you acknowledge also, I think, that ex parte reexamination is a process available to the Postal Service in this instance to ask the PTO to engage in? I don't see how it would be under Petitioner's theory. That is, Petitioner says that the word person presumptively excludes — Well, can't the — I'm sorry to interrupt. Can't the executive branch agencies always communicate with one another? In general, that happens, but as Justice Alito's question was indicating previously, it would be quite problematic for that to occur in this context. Well, why is that? Under Article II, I would think all components of the executive branch always are able to communicate with one another, absent some rule to the contrary that Congress might try to insert. Well, for example, Section 301 says that any person can bring to the PTO's attention prior art that potentially bears on the validity of an issued patent. But it also says that if that person explains in writing its reasons for thinking that the new prior art is relevant, that material shall be included in the file. And Section 302 says that a person may request ex parte reexamination, but that any such request will be communicated to the patent holder. And so it would be peculiar to say that an executive branch agency could short-circuit those mechanisms that are designed to make the process transparent, make it a part of the official record simply by an end run. It would also be peculiar to kind of make up a regime in which a federal official from one agency will call a counterpart at the PTO and say, don't treat this as a request for ex parte reexamination, but put it in the file, deal with it in the same ways that Congress intended requests for ex parte reexamination to be made. The point I was trying to make about the two points I was trying to make about the potential for an appeal are, first, we know from the statute that Congress didn't intend to rule that out. Because if a federal agency loses its appeal at the PTAB when it's trying to get a patent initially, the statute provides any disappointed patent applicant with a right of appeal to the federal circuit, and we'd have to decide whether it was appropriate to pursue such an appeal. Second, it's entirely clear from the statute that federal agencies can own patents, and those patents are potentially subject to other parties' requests for interparties review or CBM review. So if Return Mail felt that the Postal Service had a patent that was invalid, it could have requested interparties review or CBM review. If that decision — if the PTO had — I'm sorry — if the PTAB had instituted review and had ruled against the Postal Service, the Postal Service as a party to the proceedings would have had a statutory right to appeal. Again, we would have to decide as a matter of an executive branch governance whether it was appropriate to take — Go ahead. I think, Mr. Stewart, I'm not really understanding your affirmative argument here. I mean, let's assume that you have a presumption running against you, and we can argue about how strong the presumption is, but there's at least some presumption coming from the Dictionary Act, coming from just our cases on this topic, which says that the government isn't a person unless we see evidence that it is a person. So what would you point to in this statute to tell us that the government is a person? And, you know, what text are we talking about? I would say that the strongest contextual evidence is that the word person in the provisions that define IPR and CBM review is used to make available to the general public a procedural mechanism, an advantage. It's made available on a widespread basis. Second, all of the reasons for making that — Well, that doesn't seem — I mean, that just is saying everybody else gets to do this. Which is basically what the Court said in Georgia v. Evans. Isn't that flipping the presumption? I mean, the presumption is that person doesn't include the government, and you're suggesting, well, because person is broad and it's a big term, it includes the government. I think there are at least two or three different prerequisites to my theory about the context. The first is that it is making available a benefit as opposed to imposing a disadvantage. And that goes all the way back to dollar savings bank in the 19th century. The second is that the benefit is broadly available. And in that sense, this case, for instance, is distinguishable from Primate Protection League, where in Primate Protection League, the agency was arguing that it was a person acting under an officer of the United States. And if that argument had prevailed, the agency would have gotten a benefit that no private party has. What's the third? The third is that there is no evident reason that Congress would have wanted to exclude federal agencies because the rationales for creating these mechanisms in the first place apply equally when the federal agency is the — I mean, when I hear you say this, Mr. Stewart, I guess what I was hoping for was that you would have an argument from particular statutory provisions. I mean, I was trying to run an argument to Ms. Brinkman about 207A1 and A3 and how those might suggest that the government was a person. But I don't hear you saying anything like that. I hear you just saying, look, this is a broad provision, and we can't think of a reason why the government shouldn't be treated like everybody else, so the government should be treated like everybody else. Let me make one very quick general observation, and then I'll try to go to something more specific in the statute. The very general observation is that the argument I was fleshing out was basically what the Court said in Georgia v. Evans and in FISA. It said, yes, the word person would not ordinarily include a state or a foreign government, but we can't see any reason why Congress would have wanted these units almost alone among potential plaintiffs not to be able to sue under the antitrust laws. But to be more specific, Section 1498 authorizes suits against the United States for unauthorized use of a patented invention. And it has been a previous version of the statute expressly said that the United States had all defenses available to a private party. That language was deleted as unnecessary in the 1948 revision. Who deleted that, though? That wasn't deleted by Congress, was it? That was deleted as part of the 1948 recodification, and the revisor's note explained that. It was the revisor who did that, right? Yes. Congress didn't do that. Well, Congress reenacted the statute. Isn't there some kind of basic statutory canon interpretation, canon of interpretation? It says, well, the reason for the rule applies. The rule applies. And here we have the government, NASA, which might in fact want to do something, and they're being sued for infringing a patent. Now, we have a speedy way of resolving that. What reason would there be for not applying it? And now we have two. One is the court of claims difference, which is undoubtedly a difference. And the other is, well, I'm not sure. Okay, but I'm going to go back and look at all those revisions that were cited to me. Okay, that's, I would have thought, the statutory argument. Am I right? I think that's correct, and I think to take it to 1498 specifically, because that is the provision that subjects the United States. 1498, by the way, is when I think they invented this canon of interpretation. 1498 is the provision of the Title 28 that subjects the United States to liability for unauthorized use of a patented invention. And it's established that the United States can invoke all available defenses. Now, one of the defenses that we might want to invoke is that the patent is invalid. This court has held that the invalidity of a patent has to be proved by clear and convincing evidence. That was not in a case involving the federal government. The court was not construing a statutory provision that was specific to the federal government. It was construing 35 U.S.C. 282, which says that a patent has been, is presumed valid. That understanding of patent validity and the standard of proof necessary to show invalidity has been understood to carry over to Section 1498 suits, even though there's nothing in 1498 that says that in so many words, because except to the extent that Congress specifies otherwise, these suits are conducted in basically the same way as ordinary infringement suits. Now, one of the prime reasons that people who invoke IPR or CBM do it is to, is because they have actually been sued or expect to be sued for infringement and would prefer not to have to overcome the hurdle of proving invalidity by clearing convincing evidence. And if they can get before the PTO, they will have a de novo standard of review. They'll be before the expert agency. They perceive that their chances of establishing invalidity will be greater. It's not, and that is particularly integral to the CBM review scheme, which as Ms. Brinkman was pointing out, is limited by statute to people who have been sued for or charged with infringement. It is designed. What does charged with mean? I'm sorry? What does charged with mean? Charged with is, it basically means you've received a cease and desist letter. You have been informed by the patent donor that it believes you to be infringing the patent, even though you haven't yet been sued. The PTO has promulgated a regulation that says in order to establish that you've been charged with infringement, you have to demonstrate that the likelihood of an infringement suit against you is sufficiently real and immediate that you would satisfy the standards of a declaratory judgment. What about Ms. Brinkman's linchpin, that the estoppel provision, that the government effectively gets two bites of the apple, everybody else gets just one? I think we can be estopped in subsequent PTO proceedings. So we can't file successive IPR requests or CBM requests. And that category of estoppel would apply to us in full force. It's true that the estoppel provision doesn't govern proceedings in the Court of Federal Claims. We would still be subject to common law estoppel, that the primary difference between the two is that for IPR purposes, statutory estoppel encompasses arguments that could have been made but weren't, whereas common law estoppel encompasses only arguments that were actually made. But common law estoppel, what do you mean? You mean issue preclusion? Issue preclusion. That's correct. Could you tell me why is that? If we indulge the possible fiction that Congress actually gave a second of thought to the issue that's before us, I'm not sure Petitioner has much of an explanation as to why it would treat, why Congress would have wanted to treat the government differently from a private party as to these AIA proceedings. But on the other side, do you have an explanation why Congress would have wanted different estoppel rules to apply to the government? I mean, obviously the government in a variety of contexts is subject to different estoppel rules, not only equitable estoppel but also regular issue preclusion. Whereas non-mutual collateral estoppel could apply to most parties, the federal government is not subject to non-mutual collateral estoppel. So it could be that Congress thought it through and thought common law estoppel is good enough. I take the point of your question to be it may well be the case that Congress didn't think about this one way or the other, and what should we do then? And indeed, the court in Pfizer said it is apparent that Congress didn't consider the question whether a foreign government should be able to sue under the antitrust law. So it didn't rest its decision on any affirmative evidence that Congress considered that question and affirmatively wanted foreign governments to be able to sue. Well, doesn't that counsel in favor of the presumption? Shouldn't we make the government think about this issue? It could very easily decide that we were wrong if we were to decide in your adversary's favor. It's a hypothetical. But it would then be in a position to decide what kind of estoppel should be applicable or not in the court of federal claims. But if it hasn't, assuming Justice Alito's process, wouldn't we be trumping the assumption by making a policy judgment to include the government because it makes sense to some of us? I don't think you would be making your own policy judgment. And indeed, in Pfizer, the same presumption was at issue, the same ordinary rule that the term person doesn't include governmental bodies. And the court acknowledged that that principle was implicated by its decision. But it found the fact that everybody else or practically everybody else could sue and that nobody could think of a good reason that foreign government should be excluded to be a sufficient basis for rejecting the ordinary rule. But there is a purported good reason here. There's a different estoppel that applies to the government. And that might be okay with Congress, but we're not sure of that. I think that is — that has been identified as a disadvantage of our proposed rule. But nobody thinks that that's the chain of thinking that Congress went through. That is, Congress, in deciding whether the — if Congress were thinking about whether the government should be included in these provisions, presumably it would first decide, do we want the government to be able to invoke IPR and CBM? And if the answer to that was yes, it would decide, okay, now what should the estoppel rule be for the government? Congress would never say, we'll first decide in what forest should estoppel be enforceable, and then having made that decision, we'll decide does it make sense to — So, Mr. Stewart, does the estoppel point become just even a little odder still when we consider that in the IPR proceedings it's the government that would be the plaintiff, as it were, seeking to cancel a patent before the government as judge, so both prosecutor and judge in these proceedings, and then not be bound by its own findings brought in a case by its own prosecutor, effectively, later in a court of claims proceeding? So I understand the government's often not bound by estoppel, but it's usually in the role of a defendant in those circumstances, and certainly not before its own tribunal. Isn't it a little unseemly to say that the executive branch shouldn't be bound by its own decisions? Well, our position still is that under common law estoppel, we would be bound by whatever adverse ruling the PTAB made with respect to the arguments we actually advance. I understand that. We understand that. That wasn't the question. And I say I don't think it would be unusual for Congress to decide there will be somewhat different estoppel rules with respect to the government than with respect to private parties. Again, people were alluding in earlier parts of the argument to the possible anomaly of the government appealing from an adverse PTAB decision. And the court in United States v. Mendoza said one of the reasons that the government is sometimes subject to different estoppel rules than private parties is that the government's appeal calculus is different. And so to the extent that we might deem it inappropriate or might be reluctant to pursue an appeal from an adverse PTAB decision, Congress could say, well, they should still be bound by what the PTAB actually decided with respect to the claims, the arguments they actually made, but not with respect to additional claims they could have made. When you take a step back here and think about this case, there are provisions that specifically give the government the same rights as persons, 207 and other provisions in this statute. We don't have them here, obviously. That's what raises the question. So as Justice Sotomayor says, we have the presumption that the government is not a person. And then we look at the context, and you've said the context supports you, but there are contextual points that seem to cut the other way. And just to summarize them, you still have ex parte reexamination available, so it's not as if Congress would have thought the government's cut out entirely. If your position wins, you have the anomaly, which can be overcome, but it is an anomaly of government against government lawsuits in federal court. And third, even though you're trying to make the best of it, the estoppel would be very different and not part of the bargain that seems to have been part of what Congress put in place here in terms of the system. So those are all contextual points that actually cut against you, it seems to me, where your burden, because we start from the baseline of the government's not a person, is you need the context to strongly support you. So that's just a kind of stepping back summary of things I see as problems. You can respond to them as you see fit. Let me make a couple of additional contextual points, one of which is a continuation of an answer I was giving to Justice Kagan and then another is a new one. What I was saying to Justice Kagan is everybody accepts that the government in litigation bears the same burden of showing patent invalidity by clear and convincing evidence. Now, private parties have available to them an alternative IPR-CBM proceedings to try to escape that burden, to try to come before a different decision-maker who will apply a de novo standard of review. You could think of it as roughly analogous to a primary jurisdiction mechanism where one issue in the lawsuit is referred to an agency that has expertise in the relevant area. And the court, in applying various presumptions and clear statement rules, has been especially solicitous of the government as defendant, that is, resolving in the government's favor ambiguities about whether the government can be sued, what is the scope of its liability, et cetera. This is not quite that, but Petitioner is still arguing that the government should be denied access to a procedural mechanism in its capacity as defendant that is available to all private parties. If somebody argued that the patent laws allowed any other defendant to show patent invalidity by a preponderance of the evidence but required a Federal agency as defendant to prove it by clear and convincing evidence, I think the Court's reaction would be it's conceivable, but we would need pretty clear language that Congress intended that result. This is not quite that, but the Petitioner's argument is still we don't get access to a mechanism for a more favorable burden of proof. The second thing I would say is we've been looking at the case up to this point from the perspective of the Postal Service. And in part, Congress created the IPR and CBM mechanisms with the interests of private parties in mind, the interest in mind of people who might be sued for infringement and would want an avenue for seeking invalidation of the patent. But Congress also wanted to assist the PTO in doing its job. And one impetus for the AIA was the belief that ex parte reexamination simply hadn't been effective, that not enough people had invoked it and that because the people who invoked it didn't have a right to participate in the proceedings, the PTO wasn't getting enough information to do its job of not just issuing good patents in the first instance but weeding out patents that were both bad and of commercial interest. Kagan. May I ask Mr. Stewart just a couple of factual questions? This case is about the post office, but let's say it wasn't the post office. Let's say it was just a regular executive branch agency. Who would it be that would be making the decision whether to seek a proceeding like this? I mean, is there a patent officer in every agency whose job it would be to decide when this was appropriate? I don't know the answer to that. I know we have a unit in the civil division that will sometimes defend the government in CFC litigation but also at least on some occasions will be representing the interests of a federal agency in PTAB proceedings. I guess what I'm trying to figure out is to the extent that you think that maybe Congress treated the government differently here because they were afraid that the government in front of the PTAB has a kind of home court advantage and that they didn't want that, I guess the question is, is that true? I mean, is this a community of patent officials who talk to each other all the time across the government, who know each other, who deal with each other, or is this really stovepiped so that none of these people, the PTAB would have no clue of who it was before them when the Department of HHS walks in? I mean, I have been to the federal circuit bench and bar conference and there is a community thought of as the patent bar and so there probably is some form of a professional acquaintance between the various types of governmental members. But I think the one thing I would stress most is in other respects, Congress evidently didn't see that as a problem because in authorizing federal agencies to apply for patents, it didn't create a special patent examination process or even a special administrative appeal process so that the government would come before people who were unusually impervious to that sort of overreaching. And similarly, Congress made federal-owned patents susceptible to potential IPR and CBM requests by private parties and it didn't create any special mechanism out of concern that the government would have a home court advantage in those areas. And so I think the overriding theme of the legislation is you have the authorization in Section 207 to apply for a patent and everybody understands that all the statutory provisions that flesh out the details of how that system will be administered will be done the same way with respect to governmental applicants. If you were not to prevail here, what would the real world problems be for the government? You know, I'm told by the PTO that in the year since the AIA was enacted, federal agencies have submitted 20 requests for all forms of AIA post-issuance review combined. I mean, if you look at it from the standpoint of the government's overall litigation efforts across all subject matters, it's pretty small. But if you ask would the court naturally or likely construe a statute to say the government has to surmount a higher burden of proof than a private party, it seems unlikely even if it's a narrow class of suits. Thank you. Thank you, Mr. Stewart. Three minutes, Ms. Brinkman. Thank you, Your Honor. I have four points I'd like to make very quickly. The first one, I just want to clarify a thing about trying to short-circuit the re-exam process. Actually, under 301, there's a provision that says when a person requests a re-examination, it can actually be confidential. So this idea that somehow there's going to be a secret person asking it, the statute already says that doesn't have to be disclosed. I think that's 301E. The second thing I would point about, just the anomaly of the agency versus agency, whatever anyone thinks of that, it would be extraordinary for Congress to do that through silence. And to go to this question about who would represent the government, I do know that in the Civil Division there, of course, is an office that handles the patent litigation. In fact, that is the office, the Appellate Division, that handles amicus briefs for the PTO before the Federal Circuit. So there is significant interaction. I mean, I'm not suggesting that no one would follow their roles and, you know, the law and all, but just to answer your question, Justice Kagan. The other thing I would point out is that the idea of why it would be the re-examination instead of this process, the PTO is the patent expert for the government. I mean, are there other people in the government who know about patents? Sure, but when the Congress is thinking and acting against these backdrop principles and thinking, well, the PTO is the expert that would handle this. The last point I would just make is about this Court's longstanding presumptive definition. It's the traditional legal definition of person, not to include the government. And in our reply brief, we have four examples of over a century where this Court has held that there were benefits that the government wanted, could have gotten, but no, that was not what the word person meant. And they were sometimes when the government was the defendant. For example, in the international primate case, the NIH wanted to be able to remove a case, and the Court said no. In Cooper, we already spoke about that. The government wanted troubled civil damages at all and trouble. No. Davis v. Pringle was a case where the government won a priority in a bankruptcy for its claims, and the presumptive definition of person excluded it. And then it dates all the way back to the Fox case. That involved a state, a New York law, but that was the traditional legal presumption that person who could inherit and own land did not include the government. So we submit here. Does that presumption make any sense anymore, Ms. Brinkman? I mean, the idea of a presumption like this is that it's a stable default rule against which Congress can operate. But does anybody really think, this perhaps goes back to Justice Alito's question, does anybody really think that Congress thinks about this as a default rule and legislates against it? And if not, shouldn't we just do what strikes us as the thing Congress would have wanted done with respect to any particular statute? Your Honor, we think there's a very good reason for it. Using person, knowing that it doesn't include the government, fine. When Congress and the President enact laws that involve the government, a lot of other things come into play. Sovereign immunity, prosecutorial authority, there are all kinds of other things. So, yes, it makes all kinds of sense because you just don't want to have these scenarios all of a sudden. Wow, the government's in there now. How does that play out? Rather, they're not included. That is the presumption that when they are intended to be included, they can be enacted. And Congress can change this if they want. That's what they did in Cooper and, indeed, did it in a different way and provided not trouble damages initially, but a different remedy for the government. Thank you, Your Honor. Thank you, counsel. Case is submitted.